UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
ARCH SPECIALTY INSURANCE COMPANY,     :
                                      :
                 Plaintiff,     :
                                      :      **REPORT AND**
          -against-            :      **RECOMMENDATION**
                                      :
CANBERT INC.,                         :      19-CV-05920 (EK) (PK)
                                      :
                 Defendant.     :
                                      :
                                      :
                                      :
------------------------------------------------------------ x

**Peggy Kuo, United States Magistrate Judge:**

      Plaintiff Arch Specialty Insurance Company ("Plaintiff") brought this diversity action against Canbert Inc. ("Defendant"), alleging breach of contract, unjust enrichment, and account stated, arising from an insurance contract between the parties. Before the Court on referral from the Honorable Eric R. Komitee is Plaintiff's Motion for Default Judgment against Defendant ("Motion"). (Dkt. 12.) For the reasons stated herein, the undersigned respectfully recommends that the Motion be GRANTED in part and DENIED in part.

## BACKGROUND

### I.    Factual History

      Plaintiff is an insurance company organized under Missouri law with a principal place of business in New Jersey. ("Compl.," Dkt. 1 ¶ 1.) Defendant is a New York corporation with a principal place of business in New York. (*Id.* ¶ 2.)

      Plaintiff issued a commercial general liability insurance policy to Defendant (the "Policy") effective from April 24, 2016 through April 24, 2017. (*Id.* ¶ 6; Declaration of Sal Pellitteri, "Pellitteri Decl.," Dkt. 12-7 ¶¶ 5-6; Pellitteri Decl. Ex. A, Policy, Dkt. 12-8.) Under the Policy, Plaintiff provided insurance coverage in exchange for policy premiums from Defendant. (Compl. ¶ 7; Pellitteri Decl. ¶

1

6.) The Policy provided that Defendant would first pay an "initial premium," calculated based on information submitted by Defendant or its agents. (Compl. ¶ 9; Pellitteri Decl. ¶ 8.) The Policy was subject to an audit at the end of the coverage period, which could retroactively result in higher premiums that would then become due. (Compl. ¶ 10; Pellitteri Decl. ¶¶ 9-11; Policy, Dkt. 12-8[1] at 35, 48.)

Plaintiff provided insurance coverage as required under the Policy. (Compl. ¶ 8; Pellitteri Decl. ¶ 7.) An audit was conducted on or about August 25, 2017, resulting in an additional premium due of $94,396 (the "Additional Premium"). (Compl. ¶ 11; Pellitteri Decl. ¶ 12; Pellitteri Decl. Ex. B, the "Audit," Dkt. 12-9; Pellitteri Decl. Ex. C, the "Audit Endorsement," Dkt. 12-10.) The Audit papers indicate that Defendant's accountant "agreed with the audit results." (Audit at 2.)

Plaintiff alleges that Defendant is also obligated to pay a New York Surplus Lines Tax and New York State Stamping Fee (the "NYS Taxes and Fees") on the Additional Premium. (Compl. ¶ 14; Pellitteri Decl. ¶ 15.) The Surplus Lines Tax is 3.6% of the Additional Premium, which amounts to $3,398.26. (Dkt. 19 at 1.) The Stamping Fee is .18% of the Additional Premium, amounting to $169.91. (*Id.*)

Plaintiff demanded payment of the Additional Premium, along with New York Surplus Lines Tax and New York State Stamping Fee (the "NYS Taxes and Fees"), "[o]n numerous occasions prior to the commencement of the instant action." (Pellitteri Decl. ¶ 18; *see also* Compl. ¶ 13.) In a letter dated April 26, 2018, Plaintiff sent a "final notice" to Defendant, demanding that it pay $97,964.17 by May 10, 2018. (Dkt. 12-11 at 2.)[2] Attached to that letter was a "Premium Invoice" dated August 31, 2017, showing a Premium Amount of $94,396.00. Beneath that is a line item that has been redacted, along with a "Net Amount Due" that is also redacted. (Dkt. 12-11 at 3.)

---

[1] The page references for Dkt. 12-8 are to the ECF page numbering.

[2] The page references for Dkt. 12-11 are to the ECF page numbering.

Defendant has not paid the Additional Premium or the NYS Taxes and Fees. (Compl. ¶ 12; Pellitteri Decl. ¶ 14.)

## II. Procedural Background

Plaintiff filed the Complaint on October 21, 2019. (Dkt 1.) Defendant was served on October 24, 2019. (Dkt. 7.) After Defendant did not respond to the Complaint, Plaintiff requested a Certificate of Default, which the Clerk of Court entered on January 10, 2020. (Dkts. 10, 11.)

Plaintiff filed the Motion on April 9, 2020. (Dkt. 12.) An inquest was scheduled for October 14, 2020, but Defendant requested a 30-day adjournment, stating through counsel that it did not receive a copy of the summons and complaint. (Dkt. 16.) The Court granted the request in order to afford Defendant an opportunity to move to vacate the default. (Oct. 13, 2020 Order.) Instead of doing so, however, on November 9, 2020, Defendant's counsel filed a letter informing the Court that Defendant would not appear at the inquest because Defendant was in the process of dissolving and winding down its affairs. (Dkt. 18). An inquest was held on November 10, 2020, at the conclusion of which Plaintiff was directed to provide supplemental information to support its damages claims, including evidence that explained the basis for Defendant's liability for the NYS Taxes and Fees, among other things. Plaintiff filed a supplemental letter on November 13, 2020. (Dkt. 19.)

## III. Default Judgment Standard

Rule 55 of the Federal Rules of Civil Procedure prescribes a two-step process for entry of a default judgment. First, when a defendant "has failed to plead or otherwise defend," the Clerk of Court enters the defendant's default. Fed. R. Civ. P. 55(a). The plaintiff may then move the court for an entry of default judgment. Fed. R. Civ. P. 55(b)(2). "[J]ust because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right." *GuideOne Specialty Mut. Ins. Co. v. Rock Cmty. Church, Inc.*, 696 F. Supp. 2d 203, 208 (E.D.N.Y. 2010). A plaintiff must take several steps before the court will grant default judgment. The plaintiff must demonstrate proper service of the summons and

3

complaint. *See Advanced Capital Commercial Group, Inc. v. Suarez*, No. 09-CV-5558 (DRH) (GRB), 2013 WL 5329254, at *2 (E.D.N.Y. Sept. 20, 2013). The court "may first assure itself that it has personal jurisdiction over the defendant." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 133 (2d Cir. 2011) (internal quotations omitted). The plaintiff must establish compliance with the procedural requirements of Local Civ. Rules 7.1 and 55.2.

The court must also determine whether the plaintiff's "allegations establish [the defendant's] liability as a matter of law." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). "[A] party's default is deemed to constitute a concession of all well pleaded allegations of liability." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). In considering a motion for default judgment, a court accepts a plaintiff's "factual allegations as true and draw[s] all reasonable inferences in [the plaintiff's] favor." *Finkel*, 577 F.3d at 84. However, a default is "not considered an admission of damages." *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158. "The plaintiff bears the burden of presenting proof of damages, which may take the form of documentary evidence or detailed affidavits." *Joe Hand Promotions, Inc. v. Benitez*, No. 18-CV-06476 (ARR)(PK), 2020 WL 5519200, at *3 (E.D.N.Y. Aug. 27, 2020), *R&R adopted*, 2020 WL 5517240 (E.D.N.Y. Sept. 14, 2020).

"The court may conduct hearings ... when, to enter or effectuate judgment, it needs to ... establish the truth of any allegation by evidence [or] investigate any other matter." Fed. R. Civ. P. 55(b)(2).

A court "possesses significant discretion" in granting a motion for default judgment, "including [determining] whether the grounds for default are clearly established ...." *Klideris v. Trattoria El Greco*, No. 10-CV-4288 (JBW)(CLP), 2011 WL 7114003, at *2 (E.D.N.Y. Sept. 23, 2011), *R&R adopted*, 2012 WL 273078 (E.D.N.Y. Jan. 30, 2012).

**DISCUSSION**

I. <u>Jurisdiction</u>

    A. **Subject Matter Jurisdiction**

The Court has subject matter jurisdiction over this diversity action pursuant to 28 U.S.C. § 1332, because there is complete diversity of citizenship and the amount in controversy exceeds $75,000. Plaintiff is incorporated in Missouri and has a principal place of business in New Jersey. (Compl. ¶ 1.) Defendant is incorporated in and has its principal place of business in New York. (Compl. ¶ 2.) Plaintiff seeks damages of $97,964.17. (Compl. ¶¶ 17, 25; Pellitteri Decl. ¶ 17.)

    B. **Service on the Defendant**

Plaintiff properly served the Defendant by delivering and leaving a copy of the Summons and Complaint with the New York Secretary of State. *See* N.Y. Bus. Corp. L. § 306(b)(1); Fed. R. Civ. P. 4(h)(1)(B). (Dkt. 7.)

    C. **Personal Jurisdiction**

"Serving a summons ... establishes personal jurisdiction over a defendant ... who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012) (quoting Fed. R. Civ. P. 4(k)(1)(A)) New York State has general jurisdiction over corporations formed under its laws and operating within the state. *See Francis v. Ideal Masonry, Inc.*, No. 16-CV-2839 (NGG)(PK), 2018 WL 4292171, at *3 (E.D.N.Y. Aug. 3, 2018), *R&R adopted*, 2018 WL 4288625 (E.D.N.Y. Sept. 7, 2018). Defendant is a New York corporation (Compl. ¶ 2). Accordingly, the Court's exercise of jurisdiction over it is proper.

II. <u>Procedural Compliance with Local Civil Rules 7.1 and 55.2</u>

Plaintiff filed the following documents in support of the Motion: Notice of Motion (Dkt. 12); declarations and exhibits in support (Dkts. 12-1 through 12-11); a Memorandum of Law in Support

of Plaintiff's Motion for Default Judgment (Dkt. 12-12); and proof of mailing of the Motion to the Defendant (Dkt. 12-13.)  These documents comply with Local Civil Rules 7.1 and 55.2.

### III.     Liability

Plaintiff seeks a default judgment against Defendant for breach of contract and account stated.[3]

#### A.     Choice of Law

"In the absence of an express choice of law by the parties, a federal court sitting in diversity must apply the choice-of-law rules of the state in which it sits." *Mem'l Drive Consultants, Inc. v. ONY, Inc.*, 29 F. App'x 56, 62 (2d Cir. 2002) (citing *Guaranty Trust Co. v. York*, 326 U.S. 99, 108–09 (1945) and *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). "New York courts seek to apply the law of the jurisdiction with the most significant interest in, or relationship to, the dispute." *White v. ABCO Eng'g Corp.*, 221 F.3d 293, 301 (2d Cir. 2000).  "In the specific context of insurance contracts, the law to be applied is generally the law of the state which the parties understood to be the location of the insured risk." *Cont'l Cas. Co. v. Contest Promotions NY, LLC*, No. 15-CV-501 (MKB), 2016 WL 1255726, at *2 (E.D.N.Y. Mar. 28, 2016) (quoting *Lapolla Indus., Inc. v. Aspen Specialty Ins. Co.*, 962 F. Supp. 2d 479, 485 (E.D.N.Y. 2013)).  On a motion for default judgment, where the moving party has relied on New York law and no party has challenged its application, a court may apply New York law. *See, e.g., Potamkin New York, LP v. Gem Auto Brokers Inc.*, No. 11-CV-6515 (JGK)(GWG), 2012 WL 1898896, at *2 n.2 (S.D.N.Y. May 1, 2012) *R&R adopted*, 2012 WL 1870949 (S.D.N.Y. May 23, 2012) (quoting *Celle v. Filipino Reporter Enterprises Inc.*, 209 F.3d 163, 175 (2d Cir. 2000) ("Since no party has challenged the choice of New York … law, all are deemed to have consented to its application")).

---

[3] In the Complaint, Plaintiff also included a claim for unjust enrichment, but that claim was not discussed in the Motion.  Accordingly, the undersigned respectfully recommends that it be deemed abandoned.

The Policy does not contain an express choice-of-law provision. Defendant was incorporated in and has its principal place of business in New York. (Compl. ¶ 2.) Plaintiff relied on New York law in its memorandum of law in support of the Motion, and Defendant has not responded to Plaintiff's papers. (*See* Dkt. 12-12.) Therefore, New York law applies.

### B.  Breach of Contract

The elements of a breach of contract claim under New York law are "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004) (quoting *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996)).

The parties entered into an insurance agreement in which Plaintiff agreed to provide specified coverage, and in exchange Defendant agreed to pay premiums. (Compl. ¶¶ 6-7; Pellitteri Decl. ¶¶ 5-6.) Plaintiff performed all its obligations under the contract by providing the coverage described in the Policy. (Compl. ¶ 8; Pellitteri Decl. ¶ 7.) Pursuant to the terms of the Policy, Defendant agreed to pay an advance premium as a deposit. At the end of the audit period, the earned premium would be calculated and Defendant would be required to pay any additional amount. (*See* Compl. ¶ 10; Pellitteri Decl. ¶¶ 9-11; Policy at 35, 48.) Plaintiff conducted an audit and determined that Defendant owed the Additional Premium. (Pellitteri Decl. ¶¶ 12.) Defendant failed to pay the Additional Premium as required by the contract. (Compl. ¶¶ 11-12; Pellitteri Decl. ¶¶ 12-14.) Plaintiff has established a breach of contract claim for the unpaid Additional Premium.

However, Plaintiff has not established a breach of contract claim for the NYS Taxes and Fees. While the Complaint and Pellitteri Declaration both state that Defendant was "obligated to pay" the NYS Taxes and Fees, there is no allegation that the Policy required Defendant to pay those fees to Plaintiff. (*See* Compl. ¶¶ 14-16; Pellitteri Decl. ¶¶ 15-19; *see also* Policy.) Plaintiff's supplemental letter explains that "[p]ursuant to regulations promulgated by the New York State Department of Financial

7

Services, Arch is required to pay on Canbert's behalf a New York State Surplus Lines Tax equal to 3.6% of the additional premium, and a New York State Stamping Fee equal to .18% of the additional premium."[4] (Dkt. 19 at 1.) Plaintiff does not cite the specific regulations on which it is relying. Plaintiff also does not explain the contractual basis for Plaintiff's claim that Defendant must pay the NYS Taxes and Fees to Plaintiff. (*Cf. id.*) Nothing in the Policy or the papers submitted by Plaintiff indicates an obligation by Defendant to pay the NYS Taxes and Fees to Plaintiff, whether to compensate Plaintiff for paying its taxes, or otherwise. Because Plaintiff failed to show any agreement by Defendant to pay the NYS Taxes and Fees, it has not established entitlement to those fees under a breach of contract claim.

Accordingly, the undersigned finds that Defendant is liable for breach of contract as to the Additional Premium, but not the NYS Taxes and Fees.

### C. Account Stated

An account stated is an express or implied "agreement between parties to an account based on prior transactions between them with respect to the correctness of the account items and balance due." *Yiwu Lizhisha Accessories Co. v. Jjamz, Inc.*, 336 F. Supp. 3d 179, 183 (S.D.N.Y. 2018), *R&R adopted*, 2019 WL 2763841 (S.D.N.Y. July 2, 2019) (quoting *Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.*, 244 F.R.D. 204, 216 (S.D.N.Y. 2007)). An account stated claim requires a showing that "(1) an account was presented; (2) it was accepted as correct; and (3) [the] debtor promised to pay the amount stated." *Yiwu*, 336 F. Supp. 3d at 183 (quoting *Camacho Mauro Mulholland LLP v. Ocean Risk Retention Grp, Inc.*, No. 09-CV-9114, 2010 WL 2159200, at *2 (S.D.N.Y. May 26, 2010)) (quotations omitted, alteration in original).

---

[4] N.Y. Tax Law § 1551 imposes a 3.6 percent tax on "a taxable insurance contract from an insurer not authorized to transact business in [New York]…," but makes no mention of the insurance company paying this tax on behalf of an insured.

8

       1.    *Additional Premium*

Plaintiff's account stated claim fails with respect to the Additional Premium because it is duplicative of its breach of contract claim. A party cannot be granted relief on duplicative claims. *See Conway v. Icahn & Co.*, 16 F.3d 504, 511 (2d Cir. 1994) ("Where a plaintiff seeks recovery for the same damages under different legal theories, only a single recovery is allowed.") (citing *Wickham Contracting Co. v. Board of Educ.*, 715 F.2d 21, 28 (2d Cir.1983)). Claims are duplicative "if they 'arise from the same facts … and do not allege distinct damages.'" *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 175 (2d Cir. 2008) (quoting *Sitar v. Sitar*, 50 A.D.3d 667, 670 (N.Y. App. 2008)). Courts routinely dismiss account stated claims when they are based on the same facts, and would result in the same relief, as breach of contract claims. *See, e.g.*, *Arch Specialty Ins. Co. v. Sealmax Glass Sys., Inc.*, No. 16-CV-1409 (PKC)(SMG), 2017 WL 11505249, at *4 (E.D.N.Y. Feb. 15, 2017) (citing cases); *Arch Specialty Ins. Co. v. Apco Indus., Inc.*, No. 18-CV-4041 (ENV)(SJB), 2020 WL 6581000, at *5 (E.D.N.Y. Oct. 5, 2020) (denying account stated claim where "Arch Specialty's … account stated claims arise from the same facts as its breach of contract claim: Arch Specialty provided insurance coverage to [defendant] pursuant to an insurance contract, and [defendant] refused to pay according to the contract's terms."); *Arch Specialty Ins. Co. v. L&L Interior Contracting Servs. Corp.*, No. 18-CV-04175 (JMA)(AKT), 2019 WL 5394502, at *1 (E.D.N.Y. Oct. 22, 2019) ("Plaintiff cannot establish defendant's liability for the account stated claim. Because both counts arise from the same allegations that defendant failed to pay monies owed, plaintiff's claim for account stated is precluded by the default judgment on its breach of contract claim.")

Because Plaintiff's account stated claim is duplicative of its breach of contract claim with respect to the Additional Premium, the undersigned finds that default judgment cannot be granted on that claim.

### 2. *NYS Taxes and Fees*

Plaintiff's claim for account stated also fails with respect to the NYS Taxes and Fees. "[A]n agreement may be implied if 'a party receiving a statement of account keeps it without objecting to it within a reasonable time'…" *See LeBoeuf, Lamb, Green & MacRae, L.L.P. v. Worsham*, 185 F.3d 61, 64 (2d Cir. 1999) (quoting *Chisholm–Ryder Co. v. Sommer & Sommer*, 421 N.Y.S.2d 455, 457 (N.Y. App. 1979)). However, an account stated claim "cannot be used to create liability where none otherwise exists." *Diesel Props S.r.l. v. Greystone Business Credit II LLC*, 631 F.3d 42, 55 (2d Cir. 2011) (quoting *M.Paladino, Inc. v. J. Lucchese & Son Contracting Corp.*, 247 A.D.2d 515, 516 (N.Y. App. 1998)).

There is no evidence here that Defendant ever agreed to pay NYS Taxes and Fees to Plaintiff. As discussed *supra*, the Policy makes no mention of the NYS Taxes and Fees. Consistent with this silence, the Policy specifies the premium amount that was due at the inception of the contract, but does not state any amount due for additional taxes and fees. (Dkt. 12-8 at 2-3.) The Audit and Audit Endorsements also do not mention the NYS Taxes and Fees. And while Plaintiff's "final notice" letter of April 26, 2018 demanded $97,964.17 from Defendant—an amount equal to the Additional Premium plus the NYS Taxes and Fees—taxes and fees are not mentioned in the letter or in the attached August 31, 2017 Premium Invoice, in its redacted form. (Dkt. 12-11 at 2-3.) As submitted to the Court, the Premium Invoice only lists the amount due as $94,396.00.

The undersigned therefore finds that Plaintiff has not established liability for an account stated claim as to the NYS Taxes and Fees.

### IV. Damages

#### A. Additional Premium

"It is a fundamental principle of contract law that an award of damages should place a plaintiff in the same position as that party would have been if the contract had not been breached." *Arch Specialty Ins. Co. v. Apco Indus., Inc.*, No. 18-CV-4041 (ENV)(SJB), 2020 WL 6581000, at *6 (E.D.N.Y.

10

Oct. 5, 2020) (quoting *Rich-Haven Motor Sales, Inc. v. Nat'l Bank*, 163 A.D.2d 288, 289 (N.Y. App. 1990)). Plaintiff has provided sufficient evidence to support its damages with respect to the Additional Premium. Plaintiff has established that is owed $94,396.00 in Additional Premium. (Compl. ¶ 11; Pellitteri Decl. ¶ 12; Dkts. 12-9, 12-10, 12-11.) The undersigned therefore recommends that Plaintiff be awarded $94,396.00 for its breach of contract claim.

### B. Costs

Plaintiff seeks $440.00 in costs, including the $400.00 filing fee and service on the Defendant through the New York Secretary of State. (Lahr. Decl., Dkt. 12-1 ¶ 16.) Federal Rule of Civil Procedure 54(d) provides for an award of costs to the prevailing party, absent a statute, rule, or court order that provides otherwise. Filing fees and service of process fees are reimbursable as costs. 28 U.S.C. § 1920(1) (filing fees); *Master Grp. Glob. Co., Ltd. v. Toner.Com Inc.*, No. 19-CV-6648 (AMD), 2020 WL 5260581, at *15 (E.D.N.Y. Aug. 10, 2020), *R&R adopted*, 2020 WL 5259057 (E.D.N.Y. Sept. 3, 2020) (service of process costs).

"The fee applicant bears the burden of adequately documenting and itemizing the costs requested." *Monge v. Glen Cove Mansion Hosp., LLC*, No. 18-CV-7229 (SJF)(SIL), 2020 WL 1666460, at *9 (E.D.N.Y. Apr. 2, 2020) (quoting *Volpe v. Nassau County*, No. 12-CV-2416 (JFB)(AKT), 2016 WL 6238525, at *10 (E.D.N.Y. Oct. 24, 2016)). "Filing fees are recoverable without supporting documentation if verified by the docket." *Feltzin v. Union Mall LLC*, 393 F. Supp. 3d 204, 219 (E.D.N.Y. 2019) (citations omitted). "Process server fees … must be supported by documentation." *Id.*

Plaintiff's filing fee is noted on the docket (Dkt. Entry Dated Oct. 22, 2019), and Plaintiff has provided documentation of its service of process fees (Dkt. 12-5 at 2.) The undersigned therefore recommends Plaintiff be granted costs of $440.00.

11

### C. Prejudgment Interest

Under New York law, pre-judgment interest is available in actions for breach of contract. *See, e.g., Graham v. James*, 144 F.3d 229, 239 (2d Cir. 1998); N.Y. C.P.L.R. § 5001(a). "Interest shall be computed from the earliest ascertainable date the cause of action existed…." N.Y. C.P.L.R. § 5001(b). Contract claims accrue at the time of the breach. *Cont'l Cas. Co.*, 2016 WL 1255726, at *7 (quoting *Ely-Cruikshank Co. v. Bank of Montreal*, 81 N.Y.2d 399, 402 (1993)). The statutory interest rate for pre-judgment interest in New York is nine percent per year. N.Y. C.P.L.R. § 5004.

Plaintiff seeks prejudgment interest from May 10, 2018. Plaintiff's demand letter to Defendant, dated April 28, 2018, required Defendant to pay by May 10, 2018. (Dkt. 12-11 at 2.) Plaintiff's breach of contract claim therefore arose on May 10, 2018, when Defendant failed to remit payment. The statutory interest rate of 9% in this matter results in a daily interest rate of $23.28. ($94,396.00 in damages times .09 in interest divided by 365 days in a year.)

The undersigned therefore recommends that Plaintiff be granted prejudgment interest at a rate of $23.28 per day from May 10, 2018 to the entry of judgment.

### D. Post-Judgment Interest

Plaintiff is also entitled to post-judgment interest at the rate set forth in 28 U.S.C. § 1961(a). In federal diversity actions, federal courts must apply the federal rate. *Arch Specialty Ins. Co. v. Kajavi Corp.*, No. 18-CV-4043 (NGG)(SMG), 2019 WL 3719461, at *4 (E.D.N.Y. July 11, 2019), *R&R adopted,* 2019 WL 3717441 (E.D.N.Y. Aug. 7, 2019) (quoting *Cappiello v. ICD Publications, Inc.*, 720 F.3d 109, 112-113 (2d Cir. 2013)). Accordingly, the undersigned respectfully recommends that Plaintiff be awarded post-judgment interest, to be calculated from the date the Clerk of Court enters judgment in this action until the date of payment, at the rate set forth in 28 U.S.C. § 1961.

## V. Conclusion

For the foregoing reasons, the undersigned respectfully recommends that the Motion be

12

GRANTED as to Plaintiff's breach of contract claim, and that judgment be entered awarding Plaintiff (1) $94,396.00; (2) pre-judgment interest of $23.28 per day from May 10, 2018 until the entry of judgment; and (3) post-judgment interest at the rate set forth in 28 U.S.C. § 1961. The undersigned recommends that the Motion be DENIED as to Plaintiff's account stated claim.

Plaintiff is directed to serve this Report and Recommendation on Defendant forthwith and file proof of service on the docket by March 11, 2020. Any objection to this Report and Recommendation must be filed in writing with the Clerk of Court within fourteen (14) days of service. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to timely file any such objection waives the right to appeal the District Court's Order. *Caidor v. Onondaga Cty.*, 517 F.3d 601, 604 (2d Cir. 2008).

**SO ORDERED:**

*Peggy Kuo*

PEGGY KUO
United States Magistrate Judge

Dated: Brooklyn, New York
March 9, 2021